UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JAMES P. MAGUIRE,

                          Plaintiff,

**MEMORANDUM AND**
**ORDER**

         - against -

05-CV-2905 (DRH) (WDW)

JO ANNE B. BARNHART,
Commissioner of Social Security,

                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**A P P E A R A N C E S :**

**BINDER AND BINDER, P.C.**
Attorney for Plaintiff
215 Park Avenue South, 6th Floor
New York, New York 10003
By: Charles E. Binder, Esq.

**ROSLYNN R. MAUSKOPF,**
**UNITED STATES ATTORNEY**
Attorney for Defendant
One Pierrepont Plaza, 14th Floor
Brooklyn, New York 11201
By: Karen T. Callahan, Special Assistant U.S. Attorney

**HURLEY, District Judge:**

*INTRODUCTION*

          Plaintiff James P. Maguire ("Plaintiff") brings this action pursuant to 42 U.S.C.

§ 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (the

"Commissioner" or "Defendant") which denied his claim for disability benefits. Presently

before the Court are Plaintiff's and Defendant's motions for judgment on the pleadings pursuant

to Federal Rule of Civil Procedure 12(c). For the reasons discussed below, the Commissioner's

motion is denied and Plaintiff's motion is granted to the extent this case is remanded for further

administrative proceedings.

***BACKGROUND***

**I.      Procedural Background**

Plaintiff applied for disability benefits on November 1, 2000.  (Tr. at 36-39.)[1]

Plaintiff claimed that he had been disabled since February 28, 2000 due to brittle diabetes.  (*Id.*

at 36.)  After the application was denied initially, (*id.* at 22-25), Plaintiff requested a hearing.

(*Id.* at 26.)  On March 19, 2002, Plaintiff appeared before Administrative Law Judge ("ALJ")

Jerome J. Feiner.  (*Id.* at 242-60.)  Plaintiff was represented by present counsel.  ALJ Feiner

considered Plaintiff's claims de novo and, on November 8, 2002, issued a decision finding that

Plaintiff was not disabled because his impairments did not prevent him from performing his past

relevant work as an office manager for a union.  (*Id.* at 8-18.)

Thereafter, Plaintiff requested that the Appeals Council review the ALJ's

decision.  (*Id.* at 7.)  By letter dated April 18, 2005, the Appeals Council declined to review the

claim, making the ALJ's decision the final decision of the Commissioner.  (*Id.* at 3-6.)

**II.      Factual Background**

**A.      Non- Medical Evidence**

**1.      Plaintiff's Testimony**

Plaintiff testified before ALJ Feiner on March 19, 2002.  He stated that he was

born on January 26, 1942.  (Tr. at 244.)  From 1964 through 1996, he worked for the New York

City Police Department and retired in August 1996 after having reached the rank of supervising

detective lieutenant.  (*Id.* at 58, 60, 65, 245-47.)  From July 1997 through February 2000,

_____

[1]  References to "Tr." are to the Administrative Record filed in this case.

Plaintiff worked as an "assistant fund manager" for a union office. (*Id.* at 58.) He assisted the fund administrator and supervised 35 office workers responsible for distributing health and welfare benefits. (*Id.* at 59, 247.) According to Plaintiff, this job required him to sit five hours, walk one hour, and stand two hours, with no lifting or carrying. (*Id.* at 59.) In February 2000, he was terminated for falling asleep at his desk, which he blames on his chronic fatigue. (*Id.* at 249, 67.)

On a daily basis, Plaintiff drives his car locally to the supermarket and the gym. (*Id.* at 67, 255.) After he drives for fifteen or twenty minutes, he starts "dozing at the wheel." (*Id.* at 255.) He does light housework such as unloading the dishwasher and occasionally making light meals. (*Id.*) At the gym, he walks around the track, swims (about half a lap), and uses the stationary bicycle and treadmill for five to ten minute intervals. (*Id.* at 256.) He also shoots skeet weekly when the weather is nice and exercises lightly; he cannot do any vigorous work because of his cardiac condition. (*Id.* at 256-57, 251.)

Plaintiff testified that he has "pain in [his] toes" and that "all of [his] toes are completely numb" because of his diabetes. (*Id.* at 250, 258.) He loses balance and cannot stand or walk for long periods of time. (*Id.* at 250, 259.) After walking or standing for about fifteen minutes, he needs to sit down. (*Id.* at 250) He can walk for ten to fifteen minutes or about half of one mile. (*Id.* at 258.) If he sits for long periods of time, or more than fifteen or twenty minutes, his back bothers him. (*Id.* at 259.) He has taken insulin for the past ten years, has experienced these symptoms during that time period, and his symptoms have worsened over time. (*Id.* at 249-50.) His diabetes has also caused "slight" damage to his eyesight. (*Id.* at 251.)

Plaintiff had a heart attack in August 2001 and since then, has not had any chest

pain.  (*Id.*)  He also has back pain once in a while but does not have any condition more serious

that his diabetes and heart condition.  (*Id.* at 252.)

Plaintiff stated that he is very tired all of the time.  (*Id.* at 250, 253.)  His fatigue

starts about 1:00 p.m. everyday, at which point he usually takes a nap for about half an hour

which "refreshes" him.  (*Id.* at 253-54.)  He next feels fatigues at approximately 6 or 7:00 in the

evening.  (*Id.* at 254.)  When he was working, he could not work through the day without taking

a nap, a fact his employer was not "happy" with.  (*Id.*)  While at his union job, he would go into

his car at lunchtime and take a half hour nap "just to get through the day."  (*Id.* at 252.)  His

doctors told him that his fatigue was probably caused by his blood sugar levels which were not

under proper control.  (*Id.* at 253.) Plaintiff testified that he could not do his past job as an union

administrator because he would need to take a nap during the day.  (*Id.* at 254.)

**B.**     ***Medical Testimony***

The medical evidence before ALJ Feiner is briefly summarized below.

**1.**     ***Dr. Zide – Treating Endocrinologist***

Dr. Zide began treating Plaintiff in July 1993 for Type I diabetes mellitus.  (*Id.* at

96.)  She treated Plaintiff every three months.  (*Id.*)  Plaintiff's symptoms were numbness of the

balls of his feet, neuropathy in the feet bilaterally, and fatigue.  (*Id.* at 96, 98.)  Clinical findings

were cool feet, dermopathy,[2] decreased sensation to touch and vibration in the feet, and normal

gait.  (*Id.* at 97-99.)  Treatment consisted of insulin and Altace.  (*Id.* at 97.)  Dr. Zide could not

---

[2] Dermopathy is "small macules and papules of the extensor surfaces of the extremities, most commonly the shins of diabetics, which become atrophic, hyperpigmented, and occasionally undergo ulceration with scarring."  *Stedman's Medical Dictionary* 483 (27th ed. 2000)

provide a medical opinion concerning Plaintiff's abilities to perform work-related activities, noting that Plaintiff was "not evaluated for this." (*Id.* at 99-100.)

### 2. Dr. Kenneth Coombs – Treating Podiatrist

Dr. Coombs began treating Plaintiff in July 1999 for diabetic neuropathy and onychomyocosis,[3] (*id.* at 87, 92), and treated Plaintiff approximately every two months through February 2002. (*See id.* at 92-95, 194.) Plaintiff's symptoms consisted of decreased light touch and sharp dull sensation, decreased deep tendon reflexes, and tenderness in the toes secondary to thick mycotic[4] nails. (*Id.* at 87.) Treatment included proper diabetic foot care/hygeine, debridement[5] of mycotic nails/mycotic debris, and Spectrazole cream. (*Id.* at 88.) Clinical findings were atrophic skin with rubor and stasis discoloration and no digital hair growth. (*Id.*) In Dr. Coomb's medical treatment summary, dated February 5, 2001, he reported that Plaintiff's ability to lift and carry was limited to twenty pounds, he could stand and/or walk for less than two hours a day, and his neuropathy limited his ability to push and/or pull. (*Id.* at 90.)

In a Diabetes Mellitus Impairment Questionnaire dated February 15, 2002, Dr. Coombs gave Plaintiff a "poor" prognosis. (*Id.* at 194.) Plaintiff's symptoms were listed as neuropathy with associated chronic pain, limb weakness, and parasthesias.[6] (*Id.* at 195.) Clinical findings included pain, numbness, muscle weakness, and swelling in the ankle joints of

---

[3] Onychomycosis is "[v]ery common fungus infections of the nails, causing thickening, roughness, and splitting." *Stedman's* at 1262.

[4] Mycotic is "[r]elating to or caused by a fungus." *Stedman's* at 1169.

[5] Debridement is "[e]xcision of devitalized tissue and foreign matter from a wound." *Stedman's* at 460.

[6] Paresthesia is an "abnormal sensation, such as of burning, pricking, tickling, or tingling." *Stedman's* at 1316.

both feet; vascular disease/leg cramping, difficulty walking, fatigue, general malaise, and chronic foot skin infections.  (*Id.* at 194-95.)  Dr. Coombs again estimated that Plaintiff could stand/walk no more than two hours a day and lift or carry no more than twenty pounds, this time adding that he could sit no more than four hours a day and that he could not sit continuously because movement was necessary to stimulate circulation.  (*Id.* at 197.)

Dr. Coombs also indicated that Plaintiff could tolerate no more than a "low stress" work environment, explaining that he has "lost the protective mechanism for his feet and legs with impaired circulation.  Excessive or even moderate stress may cause deterioration of [his] condition."  (*Id.* at 198.)  He further noted that Plaintiff's symptoms were frequently severe enough to interfere with his attention and concentration.  (*Id.*)  He estimated that Plaintiff would likely be absent from work more than three times a month due to his impairments or treatments.  (*Id.* at 198-99.)

In a letter to Plaintiff's counsel dated March 12, 2002, Dr. Coombs noted that Plaintiff's increased pain and paresthesias "have been affecting [his] ability to stand or walk for any length of time."  (*Id.* at 201.)  Dr. Coombs opined that Plaintiff "should not participate in any work-related activity which involves long periods of standing or walking or any operation of foot-related devices and carrying or pushing weights."  (*Id.*)  He found Plaintiff's prognosis to be "poor," adding that his condition was "progressive in nature even with good blood sugar control and is non-reversible."  (*Id.*)  He concluded that Plaintiff "is unable to perform his full-time work eight hours per day, five days per week."  (*Id.*)

### 3.    *Dr. Jerome Caiati – Consultative Internist*

On February 13, 2001, Plaintiff was examined by Dr. Caiati, at the behest of the

Administration.  (*Id.* at 110-114.)  Plaintiff complained of fatigue "when his blood sugar is not controlled" and told Dr. Caiati that he could walk one mile, stand for half an hour, sit for an hour, and climb a flight of stairs.  (*Id.* at 110.)  Dr. Caiati reported that Plaintiff appeared to be in "no acute distress," had "[f]ull range of motion of the hips, knees and ankles bilaterally," had full strength in his lower extremities, and his gait was normal.  (*Id.* at 111-12.)  His diagnoses/prognoses were hypertension, diabetes, diabetic neuropathy, frequent urination, and history of alcohol abuse (1988-1992).  (*Id.* at 110, 112.)  According to Dr. Caiati, Plaintiff's abilities to sit, stand, walk, push, pull, reach, climb, and bend were unrestricted.  (*Id.* at 112.)

### 4. *Dr. Martin Roginsky – Independent Examining Endocrinologist*

Dr. Roginsky examined Plaintiff on September 26, 2001.  (*Id.* at 124-25.)  "The only significant physical findings were absent reflexes in legs, decreased sensations to pain, touch and temperature in lower legs."  (*Id.* at 125.)  Dr. Roginsky noted that Plaintiff was "a highly motivated very intelligent man with a superb work history" who can no longer work due to "tiredness and sleepiness during day hours" which Dr. Roginsky attributed to, in order of severity, sleep apnea, frequent nighttime urination, and advanced painful peripheral neuropathy. (*Id.*)

### 5. *Dr. Rahman Pourmand  – Neurological Consult*

On January 23, 2002, on referral from his treating endocrinologist, Plaintiff was examined by Dr. Pourmand.  (*Id.* at 140-41.)  Plaintiff complained of numbness in the lower extremities with no pain or burning sensation.  (*Id.* at 140.)  Dr. Pourmand noted that Plaintiff "has not developed any weakness, although in recent years he complained also of some degree of unsteadiness and imbalance but he engaged [in] physical exercises and balance is improving."

7

(*Id.*)  He further reported that Plaintiff had numbness in his toes, "some degree of problem with sleep," and good muscle strength in both the upper and lower extremities  (*Id.* at 141.)  He concluded that Plaintiff has mild diabetic polyneuropathy and "needs to engage [in] physical activities and control his diabetes for prevention of this condition."  (*Id.*)

### 6.    *Dr. John Coulehan – Independent Examining Internist*

Dr. Coulehan examined Plaintiff on May 13, 2002.  (*Id.* at 209-18.)  He noted that Plaintiff "has a long history of insulin-dependent diabetes, which has come under improved control since he began using an insulin pump within the last year or two."  (*Id.* at 209.)  Plaintiff complained of numbness in his toes which was associated with unsteadiness, balance problems, and intermittent pain in his "great toes."  (*Id.* at 209-210.)  He noted that Plaintiff could "perform all the activities of daily living," that he walks about one mile three times per week on a track at his gym, and although he drives, can do so for short periods of time only because of his severe sleepiness.  (*Id.* at 211.)

Upon physical examination, Dr. Coulehan reported that Plaintiff had mild muscle atrophy of the lower legs and severe mycotic dystrophy of all toenails.  (*Id.* at 212.)  His diagnoses included diabetic peripheral polyneuropathy and possible sleep apnea.  (*Id.*)  He concluded his report as follows:

> There is a discrepancy between the evaluations of Dr. Roginsky
> (October 2001) and Dr. Pourmand (January 2002), as to the
> claimant's functional ability and the severity of his neuropathy.
> By my examination, the neuropathy is extensive, involving both
> sensory and motor nerves, but not severe.  However, it does limit
> his ability to perform work-related activities, as well as to engage
> in cardiac rehabilitation.
>
> . . . .

Based upon this evaluation, it is my opinion that the claimant . . . is unable to perform the duties of his subsequent job with the Teamsters Union, or serve in any other capacity for which he is trained.

(*Id.* at 212-13.)

### 7. *Dr. Roth – Consultative Neurologist*

Dr. Roth examined Plaintiff on May 21, 2002. (*Id.* at 202-08.) Plaintiff's chief complaint was diabetes, a heart condition, and numb toes. (*Id.* at 202.) Plaintiff also indicated that he sometimes loses his balance while walking, and that it has happened a few times after arising from a sitting or kneeling position. (*Id.* at 202.) He further stated that he left his job at the union due to fatigue and that he walks two miles three times a week. (*Id.* at 203.)

Dr. Roth's examination revealed that Plaintiff's gait was normal, he has decreased touch sensation below the ankle and poor vibration in the right foot, and decreased sensation below the ankles bilaterally. (*Id.*) Dr. Roth concluded that Plaintiff "has a diabetic neuropathy which is mild to moderate in degree and which causes some imbalance in walking," '[h]is diabetes is pretty well controlled," "he "can walk pretty well without carrying any objects," and "[h]is thinking is intact." (*Id.*)

### C. *The ALJ's Decision*

As will be discussed more fully below, the ALJ found that Plaintiff did not have a disability under the SSA, per se or otherwise, and that he was able to perform his past job at the union. For the reasons discussed below, this matter is remanded so that the record can be further developed.

*DISCUSSION*

**I.**     ***Standard of Review***

**A.**     ***Review of the ALJ's Decision***

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  The Court may set aside a determination of the ALJ only if it "based upon legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks and citation omitted).  "Substantial evidence is 'more than a mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion.'" *Jasinski v. Barnhart,* 341 F.3d 182, 184 (2d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Furthermore, the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and thus, the reviewing court does not decide the case de novo.  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted).

**B.**     ***Eligibility for Disability Benefits***

To be eligible for disability benefits under the Social Security Act (the "SSA"), a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The SSA further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy . . . ."  *Id.* § 423(d)(2)(A).

The SSA has promulgated regulations prescribing a five-step analysis for

evaluating disability claims.  *See* 20 C.F.R. § 404.1520.  This Circuit has described the

procedure as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity. If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental
> ability to do basic work activities. If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations. If the claimant has such an
> impairment, the [Commissioner] will consider him disabled
> without considering vocational factors such as age, education, and
> work experience . . . . Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work. Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

*Rosa*, 168 F.3d at 77 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam)).  The claimant bears the burden of proof at steps one through four, while the burden

shifts to the Commissioner at step five to show that the claimant is capable of working.  *Green-*

*Younger v. Barhart*, 335 F.3d 99, 106 (2d Cir. 2003).

C.     **The Treating Physician Rule**

Social Security regulations require that an ALJ give "controlling weight" to the

medical opinion of an applicant's treating physician so long as that opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); *see also Rosa,*

168 F.3d at 78-79. The "treating physician rule" does not apply, however, when the treating physician's opinion is inconsistent with the other substantial evidence in the record, "such as the opinions of other medical experts." *Halloran,* 362 F.3d at 32; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). When the treating physician's opinion is not given controlling weight, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion." *Halloran,* 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include: (1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention of the Social Security Administration that tend to support or contradict the opinion. *Id.* § 404.1527(d)(2)(i-ii) & (d)(3-6); *see also Halloran*, 362 F.3d at 32. Furthermore, when giving the treating physician's opinion less than controlling weight, the ALJ must provide the claimant with good reasons for doing so. 20 C.F.R. § 404.1527(d)(2).

## II.     *Application of the Governing Law to the Present Facts*

### A.     *The ALJ's Decision*

Applying the five-step analysis enumerated in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had satisfied the first two steps, to wit: (1) Plaintiff had not engaged in substantial gainful activity since February 28, 2000, the date he alleges he became unable to work; and (2) Plaintiff had severe impairments related to his diabetes. The ALJ found, however, that Plaintiff did not meet the third step because his "impairments, while severe, neither meet nor equal in severity any impairment in the Listing of Impairments, Appendix 1, Subpart P, Part 404 of the Regulations." (*Id.* at 15.) Because the ALJ found that Plaintiff's ailments did not qualify

as a per se disability under the listings, the ALJ went on to analyze the fourth factor, i.e., whether Plaintiff's impairments preclude performance of his past relevant work. Finding that Plaintiff "retains the residual functional capacity to perform sedentary work, which entails approximately six hours of sitting and two hours of standing/walking during an eight-hour workday," the ALJ concluded that Plaintiff was able to perform "his past relevant sedentary work as an office manager for the Teamster's Union." (Tr. at 17.) Thus, the ALJ found that Plaintiff was not disabled under the SSA.

### B.  Plaintiff's Arguments

Plaintiff asserts the following four arguments in support of his contention that the ALJ's decision should be overturned: (1) the ALJ erred at step three of the analysis because Plaintiff's diabetic neuropathy is per se disabling pursuant to Medical Listing 9.08A; (2) the ALJ erred in rejecting the opinions of the treating and examining doctors concerning Plaintiff's abilities to sit and reach; and (3) the ALJ erred at step four of the analysis in finding that Plaintiff could perform his past work; and (4) the ALJ did not adequately consider Plaintiff's complaints of fatigue. The Court will address them in turn.

### 1.  The ALJ's Finding that Plaintiff was not Disabled Per Se

At step three in the disability process, the ALJ is required to evaluate whether Plaintiff has an impairment set forth in Appendix 1 to Subpart P of Part 404 and is therefore disabled per se. Listing 9.08A provides that "[d]iabetes mellitus with neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)" qualifies as a per se disability. 20 C.F.R. § 404, Subpt. P, App. 1 § 9.08A. Section 11.00 C

provides that:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia[7] and sensory disturbances (any or all of which may be due to cerebral cerbellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

*Id.* § 11.00C. Here, the ALJ found that although Plaintiff had several severe diseases related to his diabetes, these impairments did not reach the level of a listed impairment:

> The medical evidence establishes that the claimant is impaired by insulin-dependent diabetes mellitus, diabetic polyneoropathy, diabetic retinopathy, diabetic microangiopathy, coronary artery disease, hypertension, onychomycosis, and sleep apnea. Said impairments, while severe, neither meet nor equal in severity any impairment in the Listings of Impairments, Appendix 1, Subpart P, Part 404 of the Regulations.

(Tr. at 14-15.)

Plaintiff argues that the ALJ failed to analyze properly whether Plaintiff actually met the requirements in the listing. In this regard, Plaintiff contends that the ALJ did not specify what evidence or even what medical listing he considered in evaluating Plaintiff's claim. Instead, the ALJ conclusorily stated that Plaintiff's impairments did not meet any of the medical listings and failed to explain the reason for his finding with any specificity.

In *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982), the Second Circuit was faced with a similar argument where, as here, the ALJ simply concluded that the plaintiff's condition

---

[7] Ataxia is "[a]n inability to coordinate muscle activity during voluntary movement." *Stedman's* at 161.

did not meet any of the medical listings without offering any explanation for his finding. *Id.* at

468. The court was willing to overlook the ALJ's failure to sufficiently set forth his rationale

because the court was "able to look to other portions of the ALJ's decision and to clearly

credible evidence in finding that his determination was supported by substantial evidence." *Id.*

at 469. Nonetheless, the court noted that:

> Cases may arise, however, in which we would be unable to fathom
> the ALJ's rationale in relation to evidence in the record, especially
> where credibility determinations and inference drawing is required
> of the ALJ. In such instances, we would not hesitate to remand the
> case for further findings or a clearer explanation for the decision.
> Thus, in future cases in which the disability claim is premised
> upon one or more listed impairments of Appendix 1, the Secretary
> should set forth a sufficient rationale in support of [her] decision to
> find or not to find a listed impairment.

*Id.* (citations omitted).

For ease of review, the Court repeats the relevant listing: "[d]iabetes mellitus with

neuropathy demonstrated by significant and persistent disorganization of motor function in two

extremities resulting in sustained disturbance of gross and dexterous movements, or gait and

station (see 11.00C)" 20 C.F.R. § 404, Subpt. P, App. 1 § 9.08A. Here, it is undisputed that

Plaintiff has diabetic neuropathy. Plaintiff, however, argues that he also satisfies the remainder

of the listing because he has "[s]ustained disturbance of gross and dexterous movements [a]s

noted by Dr. Coulehan at Tr. 214-216," "sustained disturbance of gait and station [a]s noted by

Dr. Coombs at Tr. 194-195," and "imbalance in walking" as observed by Dr. Roth at page 203 of

the transcript. (Pl.'s Mem. at 15.)

As an initial matter, the Court finds that Dr. Roth's findings do not support

Plaintiff's contention that he suffers from "sustained disturbance of gross and dexterous

movements, or gait and station." Dr. Roth, a neurologist, concluded that Plaintiff has "a diabetic neuropathy which is mild to moderate in degree and which causes some imbalance in walking," that Plaintiff "can walk pretty well without carrying any objects," and that his "gait is normal." (Tr. at 203.) Thus, insofar as Plaintiff relies on Dr. Roth's opinion to support his argument that the ALJ erred in finding that Plaintiff did not satisfy Listing 9.08A, his argument fails.

As for Drs. Coombs and Coulehan, although the ALJ did not discuss these doctors' opinions within the specific context of Listing 908A, he did otherwise review and analyze each doctor's findings. Ultimately, he rejected some of Drs. Coombs' and Coulehan's conclusions as either outside their recognized areas of expertise, discussed *infra*, or inconsistent with other substantial evidence. This is particularly relevant with regard to Dr. Coombs, Plaintiff's treating podiatrist, because as a treating doctor, his opinion should be given controlling weight so long as it is not inconsistent with other substantial evidence. After reviewing these portions of the ALJ's decision and examining the record as a whole, the Court finds that there are inconsistencies in the record and that substantial evidence supports the ALJ's finding that Plaintiff did not meet or equal Listing 9.08A.

Dr. Coulehan reported that Plaintiff had "extensive [but not severe] polyneuropathy that limits balance [and] lower limb coordination." (Tr. at 215-16.) He also indicated that Plaintiff could stand and/or walk at least two hours in an eight-hour workday, (*id.* at 214), and that he had "diminished balance." (*Id.* at 215.) Dr. Coombs reported that Plaintiff could stand/walk two hours during an eight-hour workday. (*Id.* at 197.) He also stated that Plaintiff's primary symptom is "neuropathy with associated chronic pain, limb weakness and parasthesias," (*id.* at 195), had extremity pain, numbness, muscle weakness, and swelling in both

ankle joints, (*id.* at 194), and difficulty walking and was "ataxic secondary to peripheral neuropathy." (*Id.*) Arguably, these findings support the conclusion that Plaintiff had "sustained disturbance of gross and dexterous movements, or gait and station." However, the ALJ ultimately accorded them little weight because: (1) Dr. Coulehan's conclusions were contradicted by the doctor's own assessment of Plaintiff's physical capacities, including Plaintiff's ability to sit without limitation and stand/walk at least two hours; and (2) their findings were inconsistent with other substantial evidence in the record. For example, both Dr. Caiati and Dr. Roth reported that Plaintiff's gait and station were normal. (*Id.* at 111, 203.) Moreover, Dr. Caiati reported that Plaintiff had full strength in his lower extremities, had no evidence of muscle atrophy, and his abilities to sit, stand, walk, push, pull, reach, climb, and bend were unrestricted. (*Id.* at 111-12.) In addition, Dr. Pourmand concluded that Plaintiff had mild diabetic polyneuropathy and noted that Plaintiff had not developed any weakness and had good muscle strength in both the upper and lower extremities (*Id.* at 140-41.) Finally, Plaintiff himself acknowledged that he can walk one to two miles and exercised daily.

"Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In the present case, there was substantial evidence in the record as a whole to support the ALJ's determination that Plaintiff's impairment was not severe enough to meet Listing 908A. Accordingly, this portion of the ALJ's decision must be upheld.

2.      **The ALJ's Rejection of Treating and Examining Source Opinions Concerning Plaintiff's Ability to Sit and Reach and the ALJ's Findings Concerning Plaintiff's Ability to Perform his Past Work**

Plaintiff argues that the ALJ improperly accorded little probative weight to Dr. Coombs' and Dr. Coulehan's opinions and that, in turn, he erred in finding that Plaintiff could return to his former job as an office manager.  Because these two points are interrelated, the Court will discuss them in tandem.

a.      *Plaintiff's Abilities to Sit and Perform his Past Work*

Plaintiff argues that the ALJ failed to properly evaluate Dr. Coombs' and Dr. Coulehan's assessments concerning Plaintiff's ability to sit.  Plaintiff described his job as requiring five hours of sitting, one hour of walking, and two hours of standing.  (Tr. at 59.)

On February 15, 2002, Dr. Coombs found that Plaintiff can only sit for four hours during an eight-hour workday.  (Tr. at 197.)  He also found that Plaintiff must get up and move around every hour and that, once standing, Plaintiff could not return to a seated position for fifteen minutes; thus, he opined that it would be necessary or medically recommended for Plaintiff not to sit continuously in a work setting.  (*Id.*)

The ALJ found that Dr. Coombs' opinion regarding Plaintiff's ability to sit was entitled to "little probative weight" pursuant to 20 C.F.R. § 404.1513(a)(4) because it was outside his recognized area of expertise, i.e., podiatry.  (*Id.* at 15.)  20 CFR § 404.1513(a)(4) provides that podiatrists are an "acceptable medical source" for purposes of the treating physician rule to the extent they may provide evidence to establish an impairment of the foot and ankle only.  *See Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995) (finding that only the types of health care professionals listed in the regulations as "acceptable medical sources" may qualify as

treating physicians). Plaintiff argues that because Dr. Coombs' assessment of Plaintiff's ability to sit was grounded in his observation that "movement [is] necessary to stimulate circulation," (Tr. at 197), his opinion fell within his area of expertise as defined by the regulation because it pertained to Plaintiff's foot problems. The Defendant does not address this specific contention.

The Court agrees with Plaintiff that because Dr. Coombs' findings regarding Plaintiff's sitting limitations explicitly relate to Plaintiff's foot impairment, the ALJ was in error in finding that they were outside the scope of 20 CFR § 404.1513(a)(4). Thus, Dr. Coombs' opinion in this regard, as a treating podiatrist who treated Plaintiff approximately every two months for over two years, should have been given controlling weight unless it was inconsistent with other substantial evidence. *See* 20 C.F.R. § 404.1527(d)(2). Accordingly, this matter is remanded to the Commissioner so that the ALJ can re-evaluate step four of the analysis, i.e., whether Plaintiff can perform his past work, in light of Dr. Coomb's findings – which shall be accorded treating physician status – that Plaintiff can only sit for four hours per work day and cannot sit continuously.

In addition, the Court notes that although the record reflects that Plaintiff was required to sit for five hours in an eight-hour workday, there is no evidence in the record as to whether Plaintiff's former job required him to sit continuously. (*Id.* at 59.) In fact, there were no questions asked about the specific demands of Plaintiff's former job at all. Instead, the ALJ found generally that Plaintiff could perform sedentary work, as defined in 20 § CFR 404.1567(a) and SSR 83-10, which entails approximately six hours of sitting in an eight-hour workday, (Tr. at 15), and that Plaintiff's former job qualified as sedentary. (*Id.* at 16.) The ALJ further noted that sedentary work is "work by its very nature primarily performed in a seated position [and]

entails neither prolonged standing nor prolonged walking." (*Id.*)

While it is true that Plaintiff bears the burden at step four, "[i]t is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding,'" even if the claimant is represented by counsel. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)). Thus, "[i]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Butts v. Barhart*, 388 F.3d 377, 386 (2d Cir. 2004) (quoting *Seavey v. Barnhart*, 276 F.3d 1, 8 (1ˢᵗ Cir. 2001)), *amended on other grounds on rehearing*, 416 F.3d 101 (2d Cir. 2005); *see also Rosa*, 168 F.3d at 79 (noting ALJ must attempt "to fill any clear gaps in the administrative record") (citations omitted).

Thus, on remand, in re-evaluating step four, the ALJ shall further inquire into the specific duties of Plaintiff's former job, with an emphasis on how much sitting is required and whether it is continuous.

### b. Plaintiff's Ability to Reach

Plaintiff argues that the ALJ erred in failing to acknowledge Dr. Coulehan's "ascribed limitations on Plaintiff's ability to reach in any direction." (Pl.'s Mem. at 18.) Plaintiff then proffers a generic definition of the term "office manager" as a job that requires frequent reaching. (Pl.'s Mem. at 18.)

Although Dr. Coulehan, an internist who examined Plaintiff once on May 13, 2002, did note that Plaintiff's ability to reach in all directions was limited in that he could only reach "occasionally," (Tr. at 216), there is other evidence in the record which contradicts this

finding. For example, Dr. Caiati, an internist who examined Plaintiff on February 13, 2001, reported that Plaintiff's reaching was unrestricted. Similarly, Dr. Roth, a neurologist who examined Plaintiff on May 21, 2002, also opined that Plaintiff's ability to reach was unlimited. (*Id.* at 207.) Thus, although the ALJ did not explicitly address Plaintiff's ability to reach, there certainly is substantial evidence in the record to support a finding that Plaintiff's ability to reach was not impaired.

More significantly, however, the ALJ presumably did not raise this issue because Plaintiff never once alleged, either in his disability paperwork or in his testimony, that he could not perform his job because he was limited in reaching. By contrast, Plaintiff has consistently alleged that his job required five hours of sitting and that he had limited abilities in this context. Thus, the Court finds that the ALJ did not err in failing to explicitly address Plaintiff's alleged limited ability to reach.

### 3. Plaintiff's Fatigue

Plaintiff argues that the ALJ failed to properly analyze his allegations of fatigue in making his determination that Plaintiff could perform his past work. The Court agrees.

Plaintiff has consistently claimed that his fatigue was the primary reason why he was terminated from his job and why he can no longer work. (Tr. at 67, 249, 252-253.) In discounting Plaintiff's allegations of fatigue, the ALJ found as follows:

> In deciding that the claimant retains the residual functional capacity to perform sedentary work, the [ALJ] has carefully assessed the claimant's testimony of incapacitating symptomatology (including pain, fatigue, sleepiness and numbness) and related limitations within the guidelines of SSR 96-7p. Said testimony of incapacitating symptomatology is unsupported by the medical evidence and is inconsistent with Dr. Pourmand's opinion that the claimant's diabetic polyneuropathy is

mild and with the assessments of physical capacities (compatible with performance of sedentary work) offered by Dr. Caiati, Dr. Roth, and Dr. Coulehan.  Inconsistent with the claimant's testimony of incapacitating symptomatology preclusive of performance of even sedentary work, the claimant testified he exercises at a gymnasium, reads and operates a computer at home, and shoots skeets once a week when the weather permits.  In contrast to the claimant's testimony that his household activities essentially consist of preparing a light meal and unloading the dishwasher, the claimant when examined by Dr. Caiata in February 2001 indicated he is able to perform the full gamut of household activities, including cooking, cleaning, doing laundry, and shopping for food and clothing – activities incompatible with the presence of incapacitating symptomatology preclusive of performance of sedentary work.  Having analyzed the claimant's testimony of incapacitating symptomatology within the evaluative framework of SSR 96-7p, and pursuant thereto, having given due consideration to such matters as the claimant's description of symptomatology, treatment, functional restrictions and daily activities, the [ALJ] concludes that such testimony of incapacitating symptomatology is not credible.  The claimant does not have pain, fatigue, numbness, sleepiness, or other symptomatology of such severity, frequency, and duration as to cause "disability."

(Tr. at 16 (internal citations omitted).)  Thus, the ALJ found Plaintiff's statements regarding the

frequency of his symptoms "not credible" for two reasons: first, they were inconsistent and/or

unsupported by the medical evidence; and second, they were inconsistent with his testimony

regarding his daily activities.  The Court will discuss each one separately.

### a.    The Medical Evidence

The Court finds that there is overwhelming substantial evidence which rebuts the

ALJ's conclusion that Plaintiff's complaints of fatigue were not supported by medical evidence.

*Every single doctor* who examined Plaintiff reported that he experienced extreme fatigue or

noted some form of sleep disturbance.  (*See* Tr. at 96 (Dr. Zide indicating that Plaintiff presently

suffering from fatigue); *id.* at 110 (Dr. Caiati noting that Plaintiff "complains of fatigue when his

blood sugar is not controlled"); *id.* at 124 (Dr. Roginsky reporting that Plaintiff had to stop working "because of increasing severe fatigue, tiredness, and falling asleep repeatedly at work or at home during day time hours"); *id.* at 141 (Dr. Pourmand noting that Plaintiff has "some degree of problem with sleep"); *id.* at 195 (Dr. Coombs identifying "fatigue" as a clinical finding); *id.* at 203 (Dr. Roth noting that Plaintiff left his job because he was "very fatigued"); *id.* at 209 (Dr. Coulehan reporting that Plaintiff "developed a syndrome of profound sleepiness that compromised his ability to work").

 Moreover, Dr. Roginsky, an independent examining endocrinologist, examined Plaintiff on September 26, 2001 and concluded that: "The problems preventing [Plaintiff's] continuing to work are tiredness and sleepiness during day hours both at home and at work for which there are several explanations.  In order of severity: (1) sleep apnea, (2) nocturia[8] 3-4 times per day, (3) advanced painful peripheral neuropathy."  (*Id.* at 125.)  Similarly, Dr. Coulehan concluded that Plaintiff's disability results from, inter alia, a "syndrome of sleepiness, which is consistent with sleep apnea."  (*Id.* at 212.)  Thus, the Court finds that the ALJ erred in concluding that Plaintiff's complaints of fatigue were unsupported by the medical evidence.

 The ALJ also found that Plaintiff's complaints were inconsistent with Dr. Pourmand's opinion that Plaintiff's diabetic polyneuropathy was mild, as well as the assessments of physical capacities offered by Dr. Caiati, Roth, and Coulehan.  The ALJ reached this conclusion, however, with regard to Plaintiff's "incapacitating symptomatology" in general, i.e., his "pain, fatigue, sleepiness and numbness" and no effort was made on the ALJ's behalf to

---

[8] Nocturia is "excessive urination at night."  *Mosby's Medical, Nursing & Allied Health Dictionary* 1188 (6th ed. 2002)

specifically address Plaintiff's complaints of fatigue.  This is so despite the fact that fatigue has been Plaintiff's chief complaint from the onset and the reason he was terminated from his prior position.  Thus, although Plaintiff's allegations of pain or numbness may be inconsistent with mild diabetic polyneuropathy, it is unclear whether the same may be true for his fatigue.  Similarly, the general assessments made by Drs. Caiati and Roth regarding Plaintiff's capabilities do not specifically address Plaintiff's fatigue and are therefore not necessarily inconsistent with Plaintiff's specific complaints thereto.  Finally, contrary to the ALJ's decision, Dr. Coulehan concluded that Plaintiff suffered from a "syndrome of sleepiness" consistent with sleep apnea and ultimately concluded that he was unable to perform his prior job.  (*Id.* at 212-13.)

In sum, the Court finds that the ALJ erred in concluding that Plaintiff's complaints of fatigue were not supported by the medical evidence.  In addition, because the ALJ's determination that Plaintiff's complaints were inconsistent with the medical evidence was based on Plaintiff's "symptomatology" in general, it is difficult for the Court to review these findings with regard to Plaintiff's claims of fatigue.  Accordingly, upon remand, the ALJ shall specifically evaluate Plaintiff's complaints of fatigue.

### b. *Plaintiff's Testimony*

Social Security regulations require an ALJ to consider a claimant's subjective testimony regarding his symptoms in determining whether he is disabled.  *See* 20 C.F.R. § 404.1529(a).  An ALJ should compare subjective testimony regarding the frequency and severity of symptoms to objective medical evidence.  *Id.* § 404.1529(b).  If a claimant's subjective evidence of pain is supported by objective medical evidence, it is entitled to "great weight."

*Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992). However, if a claimant's symptoms suggest a greater severity of impairment than can be demonstrated by the objective medical evidence, additional factors must be considered. *See* 20 C.F.R. § 404.1529(c)(3).

Here, notwithstanding the traditional deference given an ALJ with respect to evaluating credibility, *see Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984), the ALJ's decision to disregard Plaintiff's testimony in this case is not supported by substantial evidence. First, as noted above, contrary to the ALJ's assertion, the objective medical evidence did corroborate Plaintiff's testimony regarding his fatigue. Next, to the extent Plaintiff's complaints of fatigue were not fully borne out by the medical evidence and an analysis into Plaintiff's subjective complaints was required, the ALJ erred in conclusorily determining that Plaintiff's daily activities, such as cooking, cleaning, doing laundry, and shopping for food and clothing, were incompatible with his fatigue. The Second Circuit has explicitly found that an individual who engages in activities of daily living, especially when these activities are not engaged in "for sustained periods comparable to those required to hold a sedentary job," may still be found to be disabled. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("'[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals,' such as attending church and helping his wife on occasion go shopping for their family, 'it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.'") (quoting *Nelson v. Bowen,* 882 F.2d 45, 49 (2d Cir. 1989)). Here, there is no evidence in the record on the frequency, duration or intensity at which Plaintiff performs these activities.

Finally, the ALJ failed to provide a thorough assessment of Plaintiff's credibility as required by the Commissioner's own ruling:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p. Here, the ALJ merely stated that after giving "due consideration" to the relevant factors, Plaintiff's claims were not credible. (Tr. at 16.) Thus, it is difficult for this Court to review his decision.

In sum, this matter is remanded so that the ALJ may specifically evaluate Plaintiff's complaints of fatigue in light of: (1) the medical evidence which supports such claims; and (2) Plaintiff's subjective testimony in light of the Second Circuit's decision in *Balsamo* and the factors set forth in 20 C.F.R. § 404.1529(c)(3). Upon remand, the ALJ shall set forth his findings with particularity so that the Court may adequately review the record.

## *CONCLUSION*

For all of the reasons stated above, the Commissioner's motion for judgment on the pleadings is **DENIED**; Plaintiff's motion for judgment on the pleadings is **GRANTED** to the extent that this case is remanded for further administrative proceedings consistent with this

opinion.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated:   Central Islip, New York
            July 5, 2006

                                        ____/s_____
                                        Denis R. Hurley
                                        United States District Judge